Joseph J. Heritage and Beth Cross Heritage v. Commissioner.
Heritage v. Commissioner
Docket No. 78491.
United States Tax Court
T.C. Memo 1961-62; 1961 Tax Ct. Memo LEXIS 294; 20 T.C.M. (CCH) 321; T.C.M. (RIA) 61062; February 28, 1961
*294 Milton S. Applebaum, Esq., 38 S. Dearborn St., Chicago, Ill., for the petitioners. Jay B. Kelly, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The respondent determined deficiencies in income tax of petitioners in the amounts of $367.40, $276.94, and $382.63 for the calendar years 1954, 1955, and 1956, respectively. The sole question for decision is whether petitioners are entitled to a deduction either as an ordinary and necessary business expense, a loss incurred in trade or business, or a business bad debt of amounts paid on a prior indebtedness which had been discharged in a bankruptcy proceeding. Another issue raised in the petition was conceded by petitioners at the trial. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are individuals, residing at 1400 South Kostner Avenue, Blue Island, Illinois. They filed joint Federal income tax returns for each of the calendar years 1954, 1955, and 1956 with the district director of internal revenue at Chicago, Illinois. About 1914 Joseph J. Heritage (hereinafter referred to as petitioner) became engaged in the coal business *295 in Chicago, Illinois. In 1949 Joseph J. and Beth Cross Heritage were partners with their son, Ralph Heritage, doing business as Heritage Coal & Stoker Co. The business of the partnership was the sale of coal and oil and the sale and installation of heating and air conditioning equipment. Profits and losses were shared 40 percent by Joseph J. Heritage, 40 percent by Beth Cross Heritage, and 20 percent by Ralph Heritage. In 1948, the partnership became involved in financial difficulities and needed funds to satisfy certain creditors. Petitioner asked Beatrice Smith for a loan. Beatrice Smith was an old friend and former employee of petitioner and at that time was associated with him as a stockholder in the Heritage Cartage Co. An installment note for $5,000 dated December 15, 1948, which at the election of the holder became a demand note on default in the payment of any installment, payable to Beatrice Smith was signed on behalf of the Heritage Coal & Stoker Co. and by petitioner in his individual capacity. The $5,000 for which the note was given consisted of an undisclosed amount in checks held by Beatrice Smith payable to the Heritage Cartage Company which had not been cashed and *296 the balance in cash. It was understood between petitioner and Beatrice Smith that the loan was a personal loan to petitioner but that the money would be used in the partnership business. A note dated July 21, 1949, payable to Beatrice Smith in the amount of $1,200 was signed on behalf of the Heritage Coal & Stoker Co. and by petitioner and Beth Cross Heritage, individually, and by Earle C. Heritage, individually, a son of petitioner, who was not a partner in the Heritage Coal & Stoker Co. The $1,200 for which this note was made was given to petitioner in cash and the money so received was used in the partnership business. In 1946 the petitioner owned 51 percent of the stock of the Heritage Cartage Company, and Beatrice Smith, the other 49 percent. In 1946 petitioner endorsed all of his stock in the Heritage Cartage Company to Beatrice Smith and delivered it to her as collateral to secure a debt of $4,000 which he owed her at that time. This indebtedness was later repaid by petitioner but Beatrice Smith did not return the stock to him since the partnership at that time was indebted to the Heritage Cartage Company for cartage. Petitioner was the president of the Heritage Cartage Company *297 and Beatrice Smith was the secretary of that corporation. At some undisclosed time in 1951 or thereafter, outright title to the 51 percent of the Heritage Cartage Company stock which had been owned by petitioner was transferred to Beatrice Smith. On December 27, 1949, a "Petition for Adjudication" was filed by certain creditors with the District Court of the United States, Northern District of Illinois, Eastern Division (hereinafter referred to as the District Court), which initiated bankruptcy proceedings against Joseph J. Heritage, doing business as Heritage Coal Company. On January 11, 1950, Joseph J. Heritage filed a "Petition of Debtor for Arrangement under Chapter XI" admitting, inter alia, the partnership's inability to pay its debts and declaring its intention to file an arrangement with its unsecured creditors within 60 days. The petition for arrangement asked for permission for the partnership to continue in possession of its property and assets for 60 days and that the name of the debtor be amended to read: "JOSEPH J. HERITAGE, BETH CROSS HERITAGE and RALPH HERITAGE, co-partners, doing business as HERITAGE COAL & STOKER CO." This petition was granted by an order of the *298 District Court on January 11, 1950. Upon failing to reach an arrangement with its creditors, the partnership and its partners individually were adjudged bankrupts and the proceedings under Chapter XI were dismissed on March 2, 1950. The District Court allowed a "Proof of Claim by Individual," filed by Beatrice Smith against the partnership in the amount of $6,250. This claim was based upon a note dated December 15, 1948, in the amount of $5,000 and a note dated July 21, 1949, in the amount of $1,200, of which $200 had been paid, both notes payable to Beatrice Smith, together with interest. The District Court allowed a "Proof of Claim by Individual," filed by Beatrice Smith against the petitioner, individually, in the amount of $6,200. This claim against the petitioner, individually, was based on the same notes as the claim filed against the partnership. The District Court allowed a dividend (a first and final dividend) on this proof of claim by individual filed by Beatrice Smith against petitioner, individually, in the amount of $242.14. No dividend was allowed with respect to the same claim against the partnership. A "Proof of Claim by Corporation," filed by Beatrice Smith *299 against the partners, individually and as copartners, on behalf of the Heritage Cartage Company in the amount of $2,700 for moneys loaned the bankrupts was allowed by the District Court. This claim in reality represented amounts owed by the partnership to Heritage Cartage Company for cartage of coal. No dividend was allowed by the District Court on this claim which was discharged in bankruptcy. It was never repaid by the petitioner. On June 3, 1952, the petitioners, Joseph J. and Beth Cross Heritage, individually and as copartners, were discharged as bankrupts by the District Court. On July 1, 1950, the Heritage Heating and Cooling Corporation was formed by members of petitioner's family who were not involved in the bankruptcy and by some of his close friends. Neither the petitioner nor his wife own stock in this corporation. The purpose of forming the corporation was to enable the petitioner to pursue his trade after the bankruptcy. The petitioner was the principal employee and general manager of the Heritage Heating and Cooling Corporation continuously from its inception through the year 1956. He was employed by the corporation at a salary of $75 per week and expenses, plus *300 7 percent commission on sales made by him personally until April 1, 1951, and thereafter a 10 percent commission on such sales. He was given full authority to employ and discharge employees, enter into, make and consummate contracts with customers, make purchases, borrow money for corporate purposes, incur liabilities for and on behalf of the corporation, and manage and control the operations of the business. When petitioner began to manage the Heritage Heating and Cooling Corporation, he borrowed some money for the corporation from a friend, Lee Gould, and also rented a car from Gould. He made an arrangement with two companies from which his partnership had bought oil burners to extend credit to the corporation with the understanding that the corporation would forego the usual 15 percent discount on purchases for a period of 6 or 8 months until the discounts which were not taken equalled the amounts which the partnership owed these companies. He arranged credit for the corporation with shippers of coal and assured these shippers that he would personally guarantee the account. He borrowed some money for the corporate business from his brother. He arranged with Beatrice Smith for *301 the new corporation to use four dump trucks that belonged to Heritage Cartage Company with the understanding that rental would be paid for the trucks as they were used and that he would sell for Heritage Cartage Company any trucks that were not needed for use by Heritage Heating and Cooling Corporation. At the time petitioner arranged to use the trucks of the Heritage Cartage Company in the business of the Heritage Heating and Cooling Corporation, the trucks were standing idle. When petitioner was arranging with Beatrice Smith for the rental by Heritage Heating and Cooling Corporation of the dump trucks, he told her that if she did not get her money from the bankruptcy, he would see that she did get it sometime, some way. Beatrice Smith was never asked to lend any money to the Heritage Heating and Cooling Corporation and did not make any loans to or extend credit to that corporation. The Heritage Heating and Cooling Corporation paid Beatrice Smith or the Heritage Cartage Company for the use of the trucks as they were used by it. Petitioners, on their joint Federal income tax returns for the taxable years 1954, 1955, and 1956, claimed deductions from gross income in the respective *302 amounts of $1,040, $1,120, and $1,140 for payments to Beatrice Smith, holder of notes of Heritage Coal & Stoker Co., a partnership now bankrupt, of which the taxpayers were partners. In 1954, 1955, and 1956 petitioner actually paid Beatrice Smith the respective amounts of $1,040, $1,100, and $1,140. Petitioner has repaid some of his personal creditors whose claims were discharged in the bankruptcy proceeding including a dentist and a department store. Petitioner, personally, has repaid no other unsecured creditors whose claims were discharged in the bankruptcy proceeding except Beatrice Smith. The partnership and its individual partners were absolved of all liability to unsecured creditors, including Beatrice Smith, as a result of the bankruptcy proceedings in the District Court. Neither petitioner nor the Heritage Heating and Cooling Corporation have been shown to have been advanced any credit or to have improved their credit standing on the basis of petitioner's payment to Beatrice Smith of the indebtedness to her discharged in the bankruptcy proceeding. Opinion The record is barren of any evidence of a business reason for petitioner's payments to Beatrice Smith in the taxable *303 years here involved on a debt that had been discharged in bankruptcy. Petitioner's business in the taxable years was as manager of a corporation. There is likewise no showing that these payments were connected in any way with the business of this corporation. In the early years of its existence, the corporation of which petitioner was manager rented trucks from Heritage Cartage Company, which petitioner considered to be owned by Beatrice Smith. There is no showing, however, that any indication that petitioner gave to Beatrice Smith that he would try to see that she in some way was repaid the amounts that she did not receive in the bankruptcy proceeding, influenced her in renting the trucks to the corporation. Beatrice Smith or the Heritage Cartage Company received rental payments for the trucks as they were used. The trucks were standing idle and petitioner agreed to try to sell the trucks that were not used by the corporation. Beatrice Smith was never asked to lend any money to the new corporation which petitioner managed. There is no showing that any persons other than the petitioner and Beatrice Smith knew about the payments to her so that there could have been any possible favorable *304 effect on the reputation in the industry, the credit standing or the continuance of good trade relations of either petitioner or the corporation occasioned by the payments. Absent any showing of a relationship of the payments to petitioner's business, there is no basis for the allowance of a deduction of the amounts as ordinary and necessary business expenses. Cf. , and cases therein cited, affd. (C.A. 2, 1954). Since no business purpose has been shown for petitioner's payments to Beatrice Smith, it would follow that the amount could not constitute a loss incurred in petitioner's trade or business. For this reason the instant case is distinguishable from , which is the case primarily relied upon by petitioner in support of this contention. Petitioner contends that as a guarantor of the partnership's note he is entitled to deduct the amounts paid as a business bad debt. Petitioner, in his argument, overlooks the fact that even if the primary obligation on the note originally was, as he argues, that of the partnership and not his personally, his obligation to pay the *305 indebtedness in his individual capacity was discharged in the bankruptcy proceedings. Since petitioner had no legal obligation to repay Beatrice Smith after his discharge in bankruptcy, there is no basis for a deduction by petitioner of the amounts paid as a bad debt. Decision will be entered for the respondent.